IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT NASHVILLE
January 18, 2012 Session

## GARY V. BULLARD v. STATE OF TENNESSEE

**Appeal from the Circuit Court for Rutherford County**
**No. F-64551     David Bragg, Judge**

_____

**No. M2011-00215-CCA-R3-PC - Filed April 30, 2012**

_____

The Petitioner, Gary V. Bullard, appeals from the Rutherford County Circuit Court's denial of his petition for post-conviction relief. After trial, a jury convicted him of attempted aggravated rape, a Class B felony, and aggravated assault, a Class C felony. In this appeal, Bullard argues that he received the ineffective assistance of counsel based on a failure to (1) sufficiently cross-examine the investigating police officer, (2) cross-examine the victim, and (3) offer any proof in defense.[1] Upon review, we affirm the judgment of the post-conviction court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed**

CAMILLE R. MCMULLEN, J., delivered the opinion of the court, in which JAMES CURWOOD WITT, JR., J., joined and JERRY L. SMITH, J., (not participating).

John R. Rucker, III, Murfreesboro, Tennessee, for the Petitioner-Appellant, Gary V. Bullard.

Robert E. Cooper, Jr., Attorney General and Reporter; Clark B. Thornton, Assistant Attorney General; William C. Whitesell, Jr., District Attorney General and Trevor Lynch, Assistant District Attorney General, for the Appellee, State of Tennessee.

## OPINION

**Background.** Bullard's convictions for attempted aggravated rape and aggravated assault stem from his attack on the victim in which he choked her, tore her hair out, punched her face, slammed her head into a wall and a linoleum floor, dumped liquid laundry detergent

---

[1]As stated in his brief, Bullard's issue presented is "whether trial counsel's defense strategy and tactics were so incompetent that Appellant was denied effective assistance of counsel as guaranteed under the United States and Tennessee Constitutions." From the argument section of his brief, we have gleaned the following grounds supporting his ineffective assistance of counsel claim.

on her, and urinated on her. State v. Gary V. Bullard, No. M2008-01148-CCA-R3-CD, 2009 WL 1812420, at *1-2 (Tenn. Crim. App., at Nashville, June 25, 2009). Bullard then disrobed and ordered the victim to take her clothes off and get in the shower with him. Id. at *2. Bullard appealed his convictions, which were affirmed by this court. Id. at *1. He filed a pro se petition for post-conviction relief. The trial court appointed counsel and granted a hearing on the matter.

At the evidentiary hearing, trial counsel and Bullard were the only witnesses to testify. Trial counsel, a veteran attorney, explained that he billed sixty-one hours for his trial representation of Bullard. Before trial, he met with Bullard and had many conversations about the facts surrounding the offenses with some of Bullard's friends. Counsel testified that the only possible eyewitnesses were the victim's roommate and the victim, and he was unable to locate the roommate or meet with the victim. Counsel interviewed other potential witnesses, including Bullard's father and girlfriend, Carolyn Harper.

Counsel testified that the proof on the aggravated assault was clear, and that his strategy was to require "the [p]rosecution [to] put enough proof on to satisfy the elements of the [attempted aggravated rape]." He anticipated that the trial court would dismiss the offense because the prosecution would be unable to meet its burden. Counsel also acknowledged that, as part of his strategy, he declined to cross-examine the victim "because [he] felt that the . . . testimony she gave was insufficient to support a conviction for attempted aggravated rape." Counsel explained:

I felt like if I cross[-]examined her, then she would be able to change her story or offer more evidence. And that would open the door for the District Attorney again to have redirect examination and to cure any deficiencies in her original examination that I may have exposed.

Counsel conceded that Bullard repeatedly said before trial that he wanted counsel to impeach the victim's testimony so that Bullard could then "tell his side of the story and sway the jury." Counsel did not recall what questions he asked during the cross-examination of the police officer who investigated these offenses. At the close of the State's proof, counsel moved for a judgment of acquittal, arguing that the State had offered insufficient proof of attempted aggravated rape. Counsel testified that the trial court took the motion under advisement.

Counsel was reluctant for Bullard to testify and contradict the victim's testimony for various reasons. Counsel viewed Bullard as not "very credible" because Bullard had provided "different versions" of the offense prior to trial. Counsel believed Bullard would have been impeached by the prosecution and found to be less credible than the victim. Counsel additionally testified that Bullard had difficulty controlling his anger and stated that,

"if he took the witness stand, the District Attorney would be able to exploit that and use it against him[.]" Counsel also believed that the jury was already angry with Bullard because he "had snickered or shaken his head or made some gestures that drew the attention of the jurors" during the victim's testimony. Counsel advised Bullard not to testify.

Counsel chose to present no proof on Bullard's behalf. After speaking with Bullard's father, counsel believed that he would not be a favorable witness for Bullard. After "many conversations" with Bullard's girlfriend, counsel believed that she could not offer any helpful testimony regarding whether the events occurred. He could not remember further specific reasons he chose not to call either of these potential witnesses, but counsel stated that he would have weighed any beneficial information they could have offered against any damaging testimony the State could have elicited from them.

On cross-examination by the State, counsel described the different accounts of the offense that Bullard had provided:

> [H]e told me [he] only hit her once. And on some occasions he told me that he admitted what he had done and felt sorry for doing it. On other occasions, he told me that [the victim] deserved what she got. And if he had the chance, he would do it again.

Counsel was concerned because, had Bullard testified, counsel may have been ethically required to withdraw from the case. Although he advised Bullard not to testify, he also told Bullard that he would ask "all the questions [Bullard] wanted" if Bullard chose to testify. Bullard decided not to testify at trial.

Bullard testified at the post-conviction hearing that he met with counsel before trial for ten to fifteen minutes on three occasions. He mailed counsel approximately fifteen letters, and counsel responded by letter once or twice. They discussed trial strategy, and Bullard understood that the strategy "was to plead temporary insanity." Counsel explained to Bullard that the State could prove he committed aggravated assault.

Bullard requested that counsel talk with several potential witnesses, primarily regarding the victim's methamphetamine use and associated problems, including a manipulative tendency. He provided the names of his father, his girlfriend, his roommate, and the victim's roommate. Bullard said that these witnesses could testify to the victim's character.

Bullard testified that he wanted counsel to cross-examine the victim. He said, "There was no doubt about it, I wanted him to get up there and ask her this and ask her that, and know that the fact that half of what she said was nothing but a lie." According to Bullard,

counsel acted as though he was indifferent to how the trial might go for Bullard. Bullard testified that counsel "never did [any] investigation at all."

After the evidentiary hearing, the post-conviction court denied Bullard's petition for post-conviction relief. This timely appeal followed.

## ANALYSIS

**Standard of Review.** Post-conviction relief is only warranted when a petitioner establishes that his or her conviction is void or voidable because of an abridgement of a constitutional right. T.C.A. § 40-30-103 (2006). The Tennessee Supreme Court has held:

> A post-conviction court's findings of fact are conclusive on appeal unless the evidence preponderates otherwise. When reviewing factual issues, the appellate court will not re-weigh or re-evaluate the evidence; moreover, factual questions involving the credibility of witnesses or the weight of their testimony are matters for the trial court to resolve. The appellate court's review of a legal issue, or of a mixed question of law or fact such as a claim of ineffective assistance of counsel, is de novo with no presumption of correctness.

Vaughn v. State, 202 S.W.3d 106, 115 (Tenn. 2006) (internal quotation and citations omitted). "The petitioner bears the burden of proving factual allegations in the petition for post-conviction relief by clear and convincing evidence." Id. (citing T.C.A. § 40-30-110(f); Wiley v. State, 183 S.W.3d 317, 325 (Tenn. 2006)). Evidence is considered clear and convincing when there is no serious or substantial doubt about the accuracy of the conclusions drawn from it. Hicks v. State, 983 S.W.2d 240, 245 (Tenn. Crim. App. 1998) (citing Hodges v. S.C. Toof & Co., 833 S.W.2d 896, 901 n.3 (Tenn. 1992)).

Vaughn further repeated well-settled principles applicable to claims of ineffective assistance of counsel:

> The right of a person accused of a crime to representation by counsel is guaranteed by both the Sixth Amendment to the United States Constitution and article I, section 9, of the Tennessee Constitution. Both the United States Supreme Court and this Court have recognized that this right to representation encompasses the right to reasonably effective assistance, that is, within the range of competence demanded of attorneys in criminal cases.

Vaughn, 202 S.W.3d at 116 (internal quotations and citations omitted).

In order to prevail on an ineffective assistance of counsel claim, the petitioner must establish that (1) his lawyer's performance was deficient and (2) the deficient performance prejudiced the defense. Id. (citing Strickland v. Washington, 466 U.S. 668, 687 (1984); Baxter v. Rose, 523 S.W.2d 930, 936 (Tenn. 1975)). "[A] failure to prove either deficiency or prejudice provides a sufficient basis to deny relief on the ineffective assistance claim. Indeed, a court need not address the components in any particular order or even address both if the [petitioner] makes an insufficient showing of one component." Goad v. State, 938 S.W.2d 363, 370 (Tenn. 1996) (citing Strickland, 466 U.S. at 697).

A petitioner successfully demonstrates deficient performance when the clear and convincing evidence proves that his attorney's conduct fell below "an objective standard of reasonableness under prevailing professional norms." Id. at 369 (citing Strickland, 466 U.S. at 688; Baxter, 523 S.W.2d at 936). Prejudice arising therefrom is demonstrated once the petitioner establishes "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Id. at 370. "'A reasonable probability is a probability sufficient to undermine confidence in the outcome.'" Id. (quoting Strickland, 466 U.S. at 694).

We note that "[i]n evaluating an attorney's performance, a reviewing court must be highly deferential and should indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." State v. Burns, 6 S.W.3d 453, 462 (Tenn. 1999) (citing Strickland, 466 U.S. at 689). A court will defer to counsel's tactical or strategic choices as long as they are informed by adequate preparation. Hellard v. State, 629 S.W.2d 4, 9 (Tenn. 1982). Moreover, "[n]o particular set of detailed rules for counsel's conduct can satisfactorily take account of the variety of circumstances faced by defense counsel or the range of legitimate decisions regarding how best to represent a criminal defendant." Strickland, 466 U.S. at 688-89.

**I. Failure to Sufficiently Cross-Examine Police Officer.** Bullard argues that counsel rendered ineffective assistance because he did not ask the investigating police officer about the officer's failure to charge Bullard with attempted aggravated rape. The State does not respond to this argument. We conclude that Bullard has failed to prove either deficient performance or prejudice by clear and convincing evidence.

The extent of the proof offered at the post-conviction hearing supporting this issue was counsel's testimony that he did not recall what he asked the officer during cross-examination. However, "proof of deficient representation by omission requires more than a speculative showing of a lost potential benefit." Owens v. State, 13 S.W.3d 742, 756 (Tenn. 1999). In short, Bullard offered no proof regarding the officer's reasons for not charging attempted aggravated rape, including what the officer's testimony would have been

had counsel asked the questions that Bullard now wishes he had asked. Without such proof, we can only speculate as to any prejudicial effect on Bullard's defense. Bullard, therefore, has not offered clear and convincing evidence that counsel rendered ineffective assistance, and he is not entitled to relief.

**II. Failure to Cross-Examine Victim.** Bullard argues that counsel was ineffective for failing to cross-examine the victim. He asserts that counsel's failure "left the jury with only the victim's unchallenged testimony with which to make their decision." The State responds that Bullard failed to prove ineffectiveness in this regard by clear and convincing evidence and that "counsel's strategic decision to forego cross-examination was made after the exercise of his professional judgment of the risks and benefits." We agree with the State.

At the post-conviction hearing, counsel testified that he recognized that the victim had made inconsistent statements and that, by counsel's assessment, she had offered insufficient proof on the charge of attempted aggravated rape. However, counsel strategically decided not to cross-examine the victim because he feared that it would provide the victim and the State, on redirect, an opportunity to offer additional proof and cure the deficiencies. Counsel decided that the chances of successfully challenging the charge of attempted aggravated rape were good if the State offered no additional proof, and that these prospects outweighed the chances of success if counsel pursued the alternative strategy of cross-examining the victim and then calling Bullard to testify to contradict the victim's testimony.

The post-conviction court found that Bullard failed to offer clear and convincing evidence that counsel's decisions in this regard constituted ineffective assistance. The court stated:

> At the evidentiary hearing, Petitioner made unsupported statements that the victim was manipulative and untrustworthy, but presented no evidence of the victim's criminal record and no specific evidence that might impeach her credibility. At trial, [counsel] weighed the risks and benefits of cross-examination and made the strategic choice not to cross-examine the victim. Petitioner failed to present any clear and convincing evidence to cause the Court to question [counsel]'s professional judgment on this issue.

This court has previously held that "cross-examination is a strategic and tactical decision of trial counsel, which is not to be measured by hindsight." State v. Kerley, 820 S.W.2d 753, 756 (Tenn. Crim. App. 1991). "Allegations of ineffective assistance of counsel relating to matters of trial strategy or tactics do not provide a basis for post-conviction relief." Taylor v. State, 814 S.W.2d 374, 378 (Tenn. Crim. App. 1991). Counsel did not cross-examine the victim because he believed it would have provided the State with an opportunity

to strengthen its case and to elicit further proof against Bullard. The record reflects that trial counsel's strategic decisions regarding cross-examination were informed by adequate preparation and were well within the range of competent representation to which Bullard was constitutionally entitled. The soundness of counsel's decision to challenge the sufficiency of the evidence on attempted aggravated rape is buttressed, as the State notes, by the fact that both the trial court and this court on direct appeal considered it a close question. See Gary V. Bullard, 2009 WL 1812420, at *7 (noting that "the evidence of [Bullard]'s specific intent [to commit aggravated rape] is not overwhelming"). The post-conviction court's findings, therefore, are supported by the record, and Bullard has failed to demonstrate deficient performance or prejudice. His claim merits no relief.

**III.   Failure to Offer Proof.**   Bullard argues that he received the ineffective assistance of counsel based on a failure to offer any proof on Bullard's behalf. He argues that "if trial counsel makes the decision not to challenge the State's proof in any way, competent counsel would, at a minimum, offer some evidence on behalf of [Bullard]." The State responds that Bullard failed to offer clear and convincing evidence on this claim. We agree with the State.

Counsel testified at the post-conviction hearing that he interviewed potential witnesses, including Bullard's father and girlfriend. He concluded that neither could offer any testimony beneficial to Bullard's case. Counsel also testified that in deciding not to call them at trial, he weighed their possible testimony on direct against the negative information the State could elicit from them on cross-examination.

Upon our review of the record, we conclude that Bullard has not produced clear and convincing evidence that trial counsel was ineffective based on a failure to offer proof in Bullard's defense. Importantly, Bullard did not offer at the post-conviction hearing the testimony of any witnesses he believes trial counsel should have called on his behalf. Such testimony is generally required for a court to determine that "the failure to . . . call the witness to the stand resulted in the denial of critical evidence which inured to the prejudice of the petitioner." Black v. State, 764 S.W.2d 752, 757 (Tenn. Crim. App. 1990). In addition, Bullard has made no showing that counsel's decision not to call Bullard's father or girlfriend was deficient. Counsel testified that he made this decision after interviewing each potential witness and determining that they could offer no beneficial testimony. Counsel also believed that any advantage of calling them to testify was outweighed by the risk that they would provide damaging information on cross-examination. We decline to second-guess counsel's informed decision in this regard. Consequently, Bullard is not entitled to relief.

**CONCLUSION**

-7-

Upon review, we affirm the judgment of the post-conviction court.

_____

CAMILLE R. McMULLEN, JUDGE